MICHAEL B. HORROW (SBN 162917)
SCOTT E. CALVERT (SBN 210787)
DONAHUE & HORROW, LLP
1960 E. Grand Avenue, Suite 1215
El Segundo, California 90245
Telephone: (310) 322-0300
Facsimile: (310) 322-0302
Email: mhorrow@donahuehorrow.com
Email: scalvert@donahuehorrow.com

Attorneys for Plaintiff PERLA MENDEZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| PERLA MENDEZ,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY; BANK OF AMERICA GROUP EMPLOYEE BENEFIT PLAN; DOES 1 THOUGH 10<br><br>　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR BENEFITS UNDER A GROUP EMPLOYEE BENEFIT PLAN** |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1337 and 29 U.S.C. §1132(a), (e), (f) and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA") as it involves claims by Plaintiff for long-term disability ("LTD") benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. §1331, as this action involves a federal question.

2. The events or omissions giving rise to Plaintiff's claims occurred in this judicial district, thus venue is proper here pursuant to 28 U.S.C. §1391(b)(2), and the ends of justice so require.

3. The ERISA statute at 29 U.S.C. §1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted for all benefit claims.

4. Plaintiff PERLA MENDEZ ("Plaintiff" or "Ms. Mendez") is a resident of San Bernardino County and citizen of the State of California, and at all relevant times was an employee of Bank of America Corporation ("BOA") and a participant in its employee benefit plan, identified below.

5. Plaintiff alleges upon information and belief that Defendant, METROPOLITAN LIFE INSURANCE COMPANY ("MetLife"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of New York and authorized to transact and transacting the business of insurance in this state.

6. Plaintiff is informed and believes and thereon alleges that Defendant BANK OF AMERICA GROUP EMPLOYEE BENEFIT PLAN ("Plan") is an employee welfare benefit plan established and maintained by BOA (and/or its related corporate entities) to provide employees with a variety of benefits, including long-term disability income insurance protection, and, is the Plan Administrator.

COMPLAINT FOR BENEFITS UNDER A GROUP EMPLOYEE BENEFIT PLAN

7. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and on such information and belief alleges that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this court to amend this complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiff.

8. MetLife issued Group Policy Number 34701-2-G to BOA and the eligible participants and beneficiaries of the Plan, including Ms. Mendez. Among the benefits promised by that Policy and the Plan were LTD benefits should certain criteria be met.

9. The Plan provisions governing Ms. Mendez's LTD claim state that: "Disabled" or "Disability" means that, due to Sickness or as a direct result of accidental injury:

- You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment unless, in the opinion of a Physician, future or continued treatment would be of no benefit; and
- You are unable to earn in the first 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation from any employer in Your Local Economy; and
- after such period, more than 60% of your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

10. Ms. Mendez began working for BOA in or about 2001. Prior to her disability, Ms. Mendez was a Financial Assistance Manager at Bank of America.

11. Unfortunately, Ms. Mendez injured her right knee on or about August 8, 2020 while performing her occupational duties at work. On September 26, 2020, Ms. Mendez underwent a right knee MRI, which confirmed, "sprain of unspecified site of right knee, initial encounter. Impression: 1) ACL and MCL sprains; 2) Medial meniscus posterior root tear with 3 mm extrusion of the meniscal body; 3) Bone contusion of the medial tibial plateau; 4) Large joint effusion."

12. Following her August 2020 injury, Ms. Mendez, a hard and dedicated worker, managed to continue working for about a year, despite the pain related to her injury. Eventually, however, the pain became unmanageable, and she was forced to stop working on or about August 9, 2021.

13. Ms. Mendez's disabling diagnoses and symptoms, including but not limited to, chronic pain syndrome, traumatic right knee medial meniscus tear, right knee pain, ACL and MCL sprain, bone contusion of the medial tibial plateau, large joint effusion with decreased range of motion, numbness of right lower extremity, neuropathic pain, insomnia, and antalgic gait pattern, have worsened and continue to preclude her return to work. She remains unable to return to any full-time employment.

14. Ms. Mendez underwent right meniscus repair surgery on August 10, 2021, unfortunately, the surgery failed to relieve Ms. Mendez's painful symptoms and necessitated a revision meniscus repair on June 28, 2024.

15. Initially unaware that she was entitled to LTD benefits under the Plan, Ms. Mendez did not file her claim for LTD benefits with MetLife until August 2022. At that time, Ms. Mendez filed a claim for benefits (which MetLife accepted without any assertion that her claim was untimely), submitting claim forms and medical records to MetLife in support of her claim for LTD benefits under the Plan.

16. Following a review of Ms. Mendez's medical records and other supporting documentation, MetLife approved her claim for LTD benefits and began paying her LTD benefits in or about October 2022. That initial check covered the

LTD benefits that Ms. Mendez was entitled to from February 2022 (following the completion of the Plan's 180-day Elimination Period) to October 6, 2022.

17. Over the next year, Ms. Mendez continued to provide MetLife with copies of, and access to, her medical records. Those medical records supported her claim for LTD benefits and MetLife approved her claim through September 23, 2023.

18. However, by letter dated September 29, 2023, MetLife informed Ms. Mendez that it was terminating her claim for LTD benefits, explaining that "[w]e have determined that we are unable to approve benefits on your claim beyond September 26, 2023 because there is insufficient evidence to continue to support an ongoing disability, therefore you no longer satisfy the definition of disability in your employer's Plan."

19. MetLife's decision to terminate her claim and refuse to pay Ms. Mendez benefits after September 23, 2023 was improper and erroneous. Ms. Mendez remains under the regular care of her providers, who agree that she was, and remains, disabled and unable to return to work in any capacity.

20. Ms. Mendez timely appealed MetLife's denial decision, and provided records in support of her appeal.

21. By letter dated March 27, 2024, MetLife wrote to Ms. Mendez confirming receipt of the medical records she submitted to MetLife in support of her claim and appeal, stating, "[w]e received office visit notes dated August 5, 2022 - July 14, 2023 from Institute of Health, Dr. Jenkins, Dr. Smith and Princess Denolo NP. As well as out of work notes dated September 7, 2023, November 16, 2023 and January 18, 2024 from Dr. Michael Deanda."

22. In support of her appeal, Ms. Mendez continued to provide MetLife with other records to support her claim. In July 2024, in response to a request from MetLife, Ms. Mendez, through counsel, provided the company with "updated medical records and surgical reports from August 1, 2023 to present."

23. On or about August 26, 2024, Ms. Mendez provided MetLife with an

August 13, 2024 Functional Capacity Evaluation report wherein Carissa Beyer, PT confirmed Ms. Mendez is "unable to continuously sit for 2-hours while performing sedentary work activities for a total of 6-hours in an 8-hour workday. Therefore, the client is unable to work any full time job at any physical demand level including any sedentary occupation." She also provided MetLife with updated medical records and a letter from Ms. Mendez's longtime primary physician Dr. Deanda, confirming that Ms. Mendez has been and remains totally disabled since August 9, 2021.

24. In September 2024, Ms. Mendez provided MetLife with a copy of a Vocational File Review with Labor Market data prepared by Charles Galarraga, MS, CRC, LCPC of Seacoast Rehabilitation. In the report, Mr. Galarraga offers support for his conclusion that Ms. Mendez remained totally disabled and was unable to perform the duties of any occupation. Among the support for Mr. Galarraga's conclusion was a labor market survey conducted within a 50-mile radius of Ms. Mendez' address.

25. On September 18, 2024, Ms. Mendez, through counsel, submitted a final packet of documents to MetLife in support of the appeal, including updated medical records, a personal narrative from Ms. Mendez and letters of support from Ms. Mendez's family and friends.

26. Due to the severity of her symptoms, Ms. Mendez has been and remains disabled as defined by the Plan since August 10, 2021. Ms. Mendez's treating physicians consistently and steadfastly support her claim. Yet, MetLife improperly failed to reinstate her claim.

27. Indeed, MetLife failed to timely issue a final decision on Ms. Mendez's appeal, despite the deadlines set forth in 29 C.F.R. 2560.503-1 and her multiple requests for a final claim decision.

28. On November 12, 2024, Ms. Mendez, through counsel, sent MetLife a letter requesting status of the appeal review. MetLife failed to respond to the letter.

29. On November 20, 2024, Ms. Mendez, through counsel, sent MetLife

1  another letter requesting status of the appeal review.  MetLife failed to respond to the
2  letter.
3       30.   On November 27, 2024, Ms. Mendez, through counsel, sent MetLife
4  another letter requesting status of the appeal review, noting that 105 days had passed
5  since MetLife's last correspondence.
6       31.   MetLife finally responded, by email dated December 4, 2024, merely
7  noting that Ms. Mendez's "claim is still under review."  In the email, MetLife did not
8  explain why it had, to date, failed to issue a decision on Ms. Mendez's appeal of the
9  claim denial decision.  Nor did MetLife request additional time to make a claim
10 decision.
11      32.   Pursuant to 29 C.F.R. 2560.503-1(i)(3), (i)(1), an administrator – like
12 MetLife here – must make a decision on a participant's request for review within 45
13 days of receipt of that request, and may take an additional 45 days where special
14 circumstances warrant.
15      33.   As detailed above, MetLife failed to make a decision Ms. Mendez'
16 appeal within 45 days, or even within 45 days of her last submission.
17      34.   Nor has MetLife documented which "special circumstances" have
18 necessitated the need for additional time to make a final claim decision.  In any case,
19 MetLife also failed to request an additional 45 days to make the claim decision.
20      35.   Due to MetLife's failure to respond (timely or otherwise) to Ms.
21 Mendez's appeal and multiple requests for a decision on her appeal, as noted above,
22 Ms. Mendez is deemed, pursuant to 29 C.F.R. 2560.503-1 (1), to have exhausted all
23 of the administrative remedies available to her under the Plan.
24      36.   Ms. Mendez's LTD claim has accordingly been "deemed denied," due to
25 MetLife's inaction and the company's failure to follow ERISA's rules and
26 requirements.  Ms. Mendez has thus exhausted her administrative remedies with
27 respect to the LTD claim and has the right to bring an action under ERISA
28 §502(a)(1)(B).

DONAHUE & HORROW, LLP

– 7 –
COMPLAINT FOR BENEFITS UNDER A GROUP EMPLOYEE BENEFIT PLAN

37. Despite the overwhelming evidence Ms. Mendez provided to MetLife in support of her disability claim and appeal of MetLife's erroneous and wrongful claim decision, MetLife failed to approve and reinstate her LTD claim.

38. As a direct and proximate result of MetLife's failure to provide Ms. Mendez LTD benefits after September 23, 2023, she has been deprived of said benefits.

39. As a further direct and proximate result of the denial of her claim for LTD benefits, Ms. Mendez has been required to incur attorneys' fees to pursue this action and is entitled to have such fees paid by Defendants pursuant to 29 U.S.C. § 1132(g) (1), ERISA § 502(g) (1).

40. A controversy now exists between the parties as to whether Ms. Mendez is disabled as defined in the Plan. Ms. Mendez seeks the declaration of this Court that she meets the Plan's definition of disability, and thus he is entitled to past due LTD disability benefits under the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of disability benefits from September 24, 2023 to the date of judgment;

2. For reasonable attorneys' and costs fees incurred in this action; and,

3. For such other and further relief as the Court deems just and proper.

DATED: December 6, 2024                    DONAHUE & HORROW, LLP

MICHAEL B. HORROW
SCOTT E. CALVERT
*Attorneys for Plaintiff Perla Mendez*